Leah S. Freed, SBN 021332
Justin B. Caresia, SBN 034007
Ogletree, Deakins, Nash, Smoak & Stewart, P.C., SBN 00504800
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 778-3700
Fax: (602) 778-3750
leah.freed@ogletree.com
justin.caresia@ogletree.com

*Attorneys for Defendant DMB Sports Clubs Limited Partnership*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Stuart McNicol,<br><br>                    Plaintiff,<br><br>          vs.<br><br>DMB Sports Clubs Limited Partnership,<br><br>                    Defendant. | No. 2:19-cv-00750-PHX-MTL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant DMB Sports Clubs Limited Partnership ("DMB") respectfully submits its Reply in Support of Defendant's Motion for Summary Judgment [Doc. 42 ("Motion")]. Plaintiff's Response fails to rebut the undisputed record evidence that Plaintiff's FLSA retaliation and AEPA wrongful termination claims fail as a matter of law. Plaintiff's Response underscores that his dissatisfaction with his employment at DMB (which led him to voluntarily resign) was attributable to his disagreement with his job duties and compensation, and that he was not retaliated in any manner for his overtime complaint or his allegations regarding DMB's payroll practices. Plaintiff has failed to produce any evidence creating a genuine issue of fact for trial and DMB is entitled to summary judgment on each of Plaintiff's claims.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

## I.    Plaintiff Fails To Demonstrate A Material Issue Of Disputed Fact Sufficient To Preclude Dismissal Of His FLSA Retaliation Claim.

Plaintiff fails to marshal any evidence to create an issue of fact that DMB retaliated against him after he complained of unpaid overtime in August 2016. As stated more fully in Defendant's Motion, many of the actions Plaintiff alleges were retaliatory do not rise to the level of an adverse employment action, and he has not demonstrated any causal connection between any alleged adverse employment action and his overtime complaint or any other alleged protected activity.

The only alleged adverse actions with any arguable temporal proximity to Plaintiff's overtime complaint are his unsatisfactory 2016 evaluation and corresponding denial of a raise.[1] Plaintiff insists the evaluation "was not a true or valid evaluation by the biased General Manager." [Response, p. 13.] However, neither Plaintiff's disagreement with the evaluation nor his conclusory allegation of bias are sufficient to create an issue of fact. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment"); *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact"). The record evidence conclusively demonstrates that Plaintiff's 2016 evaluation and denial of a raise were based on Plaintiff's failure to satisfactorily perform the job duties outlined in his job description and the "Expectations for Success" memorandum, which Mr. Heron presented to him in July 2016 – weeks ***before*** his overtime complaint. [Motion, Ex. 2 at 118:10-11; 119:4-6; Ex. 4 at 45:15-46:8; 50:13-17; Ex. 7.] The fact that DMB addressed these very same performance issues with Plaintiff ***before*** his overtime

---

[1] Although Plaintiff alleges DMB hired two teenagers to perform racquet stringing and thus reduce his income, he does not produce any evidence this actually occurred or, if it did occur, that it had any relation to his overtime complaint. In fact, Plaintiff expressly admitted DMB made various changes to the racquet-stringing program, including purchasing a stringing machine, to generate additional revenue from the program. [Motion, Ex. 2 at 54:20-55:6; 58:20-59:15.]

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

complaint belies any potential inference that his 2016 evaluation or denial of a raise were retaliatory.

Because DMB had addressed these performance deficiencies with Plaintiff before his overtime complaint, Plaintiff must prove DMB unjustifiably increased its criticisms of Plaintiff's performance or failed to recognize sudden improvement in his performance, which he has not done. *See Garner v. Motorola, Inc.*, 95 F. Supp. 2d 1069, 1080 (D. Ariz. 2000). Plaintiff's attempt to mischaracterize the "Expectations for Success" memorandum as "a generalized memo" that was "not about any alleged work deficiencies" has no basis in fact and is directly contradicted by the title and substance of the memorandum, which speaks for itself. [Response, p. 13.]; [Motion, Ex. 6.] Plaintiff's failure to establish any causal link between his overtime complaint and his 2016 evaluation and denial of a raise is fatal to his claim.

Plaintiff has likewise failed to establish any causal link between his overtime complaint and any remaining purported adverse actions. By his own admission, Plaintiff received a favorable evaluation for 2017. [Response, p. 5 (characterizing his 2017 evaluation as "great").] This favorable evaluation dispels any potential inference of retaliation for any of the adverse actions Plaintiff allegedly suffered thereafter.[2] *See, e.g.*, *Manatt v. Bank of Am.*, 339 F.3d 792, 802 (9th Cir. 2009) (explaining that positive events occurring between protected activity and alleged adverse action dispel any inference of causation); *Moorehead v. Hi-Health Supermart Corp.*, 2017 WL 131564, at *7 (D. Ariz. Jan. 13, 2017) (holding that "multiple positive reviews and raises" broke the causal chain). Plaintiff argues an

---

[2] As anticipated, Plaintiff points to Mr. Critchley's alleged statement to him in November 2016 that Mr. Krimbill "wanted Plaintiff fired" (which both he and Mr. Critchley deny) as evidence of causation, even though Plaintiff was never fired and more than 18 months passed between Mr. Krimbill's alleged statement and Plaintiff's resignation. Thus, Plaintiff cannot establish any causal link between this alleged direct evidence and any adverse action. *See, e.g.*, *DeHorney v. Bank of Am. Nat. Tr. and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (affirming summary judgment for employer on race discrimination claim because plaintiff failed to establish any nexus between alleged racial slur and the decision to terminate her employment).

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

inference of retaliation remains, despite the case law to the contrary, because it was Mr. Critchley who completed his 2017 evaluation, not Mr. Krimbill. Plaintiff provides no support for this argument, which fails to recognize Mr. Critchley was also involved in his 2016 evaluation. [Motion, Ex. 7.]

Even if Plaintiff's favorable 2017 evaluation had not broken the causal chain, the significant passage of time between his overtime complaint and all of the remaining purported adverse actions – at a minimum, **sixteen months** – precludes any inference of retaliation as a matter of law. *See, e.g.*, *Castillo v. Wells Fargo Bank, N.A.*, 554 F. App'x 646, 647 n.1 (9th Cir. 2014) (holding that fifteen month gap between protected activity and alleged adverse action was "too long to give rise to an inference of causation"); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ("A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation."). Although Plaintiff points to a Ninth Circuit case that found temporal proximity existed with an eleven month gap, this argument is unavailing because the temporal gap between Plaintiff's overtime complaint and the adverse actions he was allegedly subjected to following his favorable 2017 evaluation is significantly longer than eleven months.[3]

Even though Plaintiff cannot establish any causal link between his August 2016 overtime complaint and any purported adverse actions he claims he experienced following his favorable 2017 evaluation, DMB will address each in turn. Plaintiff first alleges DMB began selectively enforcing policies against him in 2018 because of his overtime complaint approximately eighteen months earlier. Specifically, Plaintiff continues to falsely claim he was not allowed to teach lessons during Junior Academy hours; yet, his record admissions reflect that DMB did not prohibit tennis professionals from teaching lessons during those

---

[3] Plaintiff also argues his failure to establish temporal proximity is not fatal to his claim because he is relying on a "sustained series of negative incidents leading up to the termination." [Response, p. 14.] This argument is meritless because the record evidence and Plaintiff's own admissions establish he received a *favorable* evaluation in 2017 and thus did not suffer a "sustained series of negative incidents" during his employment with DMB.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

hours and he was expressly granted permission to teach lessons during those hours on multiple occasions. [Motion, Ex. 2 at 227:1-228:23.] Moreover, Plaintiff does not dispute DMB's enforcement of this policy affected only two of his clients. [*Id.* at 93:17-94:5.]

Plaintiff also alleges that starting in February 2018, DMB enforced its policy that requires lesson recipients to be club members only against him. The only potential evidence he provides of disparate enforcement aside from his own conclusory statements is an affidavit from a co-worker who was only employed by DMB until February 2018 [Response, Ex. E], precisely the time when DMB re-communicated the policy to all employees, and thus does not demonstrate any disparate enforcement during the relevant time period. The final policy Plaintiff contends DMB disparately enforced against him relates to former employees' access to DMB clubs. Plaintiff fails to explain how DMB's application of its access policy *after* his voluntary resignation constitutes an adverse employment action or why it is in any way relevant to his claim.

Plaintiff next alleges he engaged in protected activity by reporting "illegal off the book payments" to Mr. Critchley in April and May 2018, and was thereafter subjected to adverse employment action(s). Plaintiff's theory that all of the alleged retaliation up to April 2018 was at the behest of Mr. Krimbill, while all of the alleged retaliation after April 2018 was by Mr. Critchley, is spurious and untenable. Plaintiff cannot create a genuine fact issue by attributing alleged retaliatory acts to whatever actor suits him best. Moreover, each of the actions from April and May 2018 of which he complains either do not constitute adverse actions or, as reflected by the record evidence, are blatantly mischaracterized.

Plaintiff's alleges that Mr. Critchley called his other employer, Desert Highlands, in April 2018 in retaliation for his unpaid overtime complaint some twenty months prior and reporting alleged "off the book payments" in April 2018. While the call may have annoyed Plaintiff, it did not rise to the level of an adverse action because it had no impact on Plaintiff's employment with DMB or Desert Highlands. *See Burlington N. and Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006) (explaining that "petty slights" and "minor annoyances" are not adverse employment actions). Plaintiff also cites to his April 4, 2018 conversation with Mr.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

Critchley about his compensation structure in asserting that DMB denied him health care benefits in April 2018 because of his complaints. The only reference Mr. Critchley makes to Plaintiff's health care benefits is his comment that he "asked Doug for the info to run your stuff from last year when you didn't have health insurance." [Response, Ex. N at 1:14-15.] Contrary to Plaintiff's apparent assertion, Mr. Critchley's vague comment that Plaintiff did not have health insurance through DMB in 2017 does not create any inference that DMB denied him health care benefits in April 2018 because of his alleged complaints.

Plaintiff next contends that in May 2018, Mr. Critchley "required" and "forced" him to become involved in the Juniors Academy and added additional job duties to the Head Pro position. These allegations are false and unsupported (and in fact contradicted) by record evidence. Following their May 3, 2018 conversation, and at Plaintiff's request, Mr. Critchley sent Plaintiff a description of the tasks he "envisioned" the Head Tennis Professional performing – not that Plaintiff was required or being forced to perform. [Motion, Ex. 16.] Plaintiff does not and cannot dispute that Mr. Critchley expressly reiterated "it is also possible moving forward that these roles be divided among different individuals" – in other words, Mr. Critchley was not forcing Plaintiff to do anything. [*Id.*] Indeed, Mr. Critchley would not have made such a statement had he truly been adding job duties to the Head Tennis Professional position.[4]

Plaintiff next alleges that in April and May 2018, Mr. Critchley prepared a "false write up" in retaliation for his complaints. Notably, although Mr. Critchley prepared a Performance Improvement Plan ("PIP") for Plaintiff, the PIP was never issued to Plaintiff. Thus, by definition, it did not constitute an adverse employment action. *See, e.g.*, *Kortan v.*

---

[4] In addition, many of the tasks on the list – such as taking on a larger role during social events and attending and planning such events – had always been required duties of Plaintiff's position. [Motion, Ex. 2 at 41:21-42:1; 68:20-23; 69:13-16; 155:16-156:20; Exs. 3, 6, 16.] Plaintiff's unsupported insistence to the contrary is directly contradicted by several exhibits in the record, including his job description. [Motion, Ex. 3 (stating that Plaintiff was expected to "[h]elp organize periodic special events at the club in an effort to attract and retain members' tennis interests" and "assist in all tennis related activities").

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

*Cal. Youth Auth.*, 217 F.3d 1104, 1112-13 (9th Cir. 2000) (explaining that a negative performance review that is subsequently reversed or changed by the employer does not constitute an adverse employment action). Even if Plaintiff had been placed on the PIP, the record demonstrates the PIP was motivated by legitimate reasons. Plaintiff does not dispute he ignored Mr. Critchley's requests that he create a racquet-stringing poster, write an article about racquet stringing, and collect information regarding how tennis professionals are paid throughout the country. [Motion, Ex. 2 at 160:4-21.] Nor does he dispute that when Mr. Critchley followed up about his failure to complete these tasks, he admitted his attitude was becoming more negative again because he felt he was underpaid and DMB was trying to take away "his" clients. [*Id.*, Ex. 11; Ex. 2 at 181:16-182:5; Ex. 4 at 44:14-17; 54:4-10; 56:19-57:3.] Finally, Plaintiff does not dispute he failed to plan any social events in 2018 and only attended one social event in 2018. [Response, p. 7 (alleging that "Critchley only could name three events and one of those [his] absence was excused").]

Plaintiff contends DMB also removed his managerial online access, "impeding [his] work performance," in retaliation for his complaints. [Response, p. 12.] This allegation ignores Plaintiff's record admission he was never a manager during his employment with DMB and therefore there was no reason for him to have managerial access in the Spectrum system. [Motion, Ex. 2 at 43:13-44:7.] Further, Plaintiff directly contradicts his own deposition testimony that this revocation of access did not change any aspect of his employment or otherwise impact his ability to do his job, and thus cannot constitute an adverse employment action. [*Id.* at 202:11-203:7.]; *see, e.g.*, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.3d 262, 266 (9th Cir. 1991) (explaining that the general rule is that "a party cannot create an issue of fact by . . . contradicting his prior deposition testimony").

Finally, Plaintiff alleges he was constructively discharged – twice (once in May 2018 and again in July 2018) – in retaliation for his complaints. Plaintiff's allegation is based on the same conclusory and unsupported allegations addressed above. Each purported constructive discharge occurred nearly ***two years*** after Plaintiff first raised his overtime complaint, precluding any finding of a causal link between his complaint and the alleged

constructive discharge(s). Moreover, Plaintiff falls far short of establishing his working conditions at DMB at the time of his alleged constructive discharges were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).

The undisputed evidence and Plaintiff's own admissions demonstrate that in early 2018, he directed his efforts away from DMB and towards his employment with Desert Highlands. Plaintiff's failure to refute (or even address) the undisputed evidence on this point is telling. Plaintiff does not dispute Desert Highlands provided him new clients, allowed him to charge more for lessons than he was able to charge at DMB, and offered him a higher commission rate than he had at DMB. [Motion, Ex. 2 at 96:18-97:14; 104:14-17; 209:16-23; Exs. 12, 13.] Nor does he dispute his timesheets from DMB reflect a noticeable decrease in hours at precisely the same time his timesheets from Desert Highlands reflect a noticeable increase in hours. [*Id.*] Plaintiff even admits he turned down lesson opportunities from DMB, directly contradicting his unsupported assertion DMB deprived him of lesson opportunities. [Response, p. 8 n. 1.] These circumstances simply do not give rise to constructive discharge as a matter of law. *See, e.g.*, *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1161 (D. Ariz. 2016) (granting summary judgment for employer on constructive discharge claim where employee "resigned before affording [his] employer a reasonable opportunity to investigate the complaint and only after he received an offer for a higher-paying job"). Accordingly, DMB is entitled to summary judgment on Plaintiff's FLSA retaliation claim.

## II.   Plaintiff Fails To Demonstrate A Material Issue Of Disputed Fact Sufficient To Preclude Dismissal Of His AEPA Wrongful Termination Claim.

Plaintiff similarly fails to proffer record evidence sufficient to preclude summary judgment in DMB's favor on his AEPA wrongful termination claim. In his Response, Plaintiff contends he was "expressly discharged by DMB from the Head Pro position" *and* constructively discharged from that same position. [Response, pp. 15-17.] But Plaintiff could not possibly have been terminated *and* constructively discharged from the same

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

position. Moreover, the testimony Plaintiff cites to in support of this contention demonstrates that he and Mr. Critchley discussed potential changes to his role with the club, not that he was expressly terminated. Moreover, Mr. Critchley's May 14, 2018 e-mail, in which he listed duties he "envisioned" the Head Pro performing, directly refutes Plaintiff's contention that this was a "take it or leave it" offer that constituted an express termination. [Motion, Ex. 16.] Accordingly, Plaintiff has not established that DMB terminated his employment, and his claim under A.R.S. § 23-1501 fails.

As for Plaintiff's contention that he was constructively discharged under A.R.S. § 23-1502, Plaintiff must prove that: (1) his working conditions were so objectively difficult or unpleasant that a reasonable employee would have felt compelled to resign; or (2) evidence of "outrageous" conduct by DMB. A.R.S. § 23-1502(A)(1)-(2). Examples of "outrageous" conduct provided in the statute include "sexual assault, threats of violence directed at the employee, [or] a continuous pattern of discriminatory harassment." A.R.S. § 23-1502(F). Plaintiff has not established any evidence of "outrageous" conduct by DMB aside from his unsupported, conclusory assertion that his working conditions "constituted outrageous conduct . . . justifying a constructive discharge claim without the necessity of offering a reasonable time to correct the situation." [Response, pp. 17-18.] However, conclusory statements without factual support are insufficient to defeat a motion for summary judgment. *Nat'l Steel Corp. v. Golden Eagle Ins. Corp.*, 121 F.3d 496, 502 (9th Cir. 1997).

Because Plaintiff has not established any evidence of "outrageous" conduct by DMB, his constructive discharge claim can only survive if he: (1) satisfied the prerequisites outlined in A.R.S. § 23-1502(B); and (2) can prove his working conditions were so objectively difficult or unpleasant that a reasonable employee would have felt compelled to resign. However, Plaintiff admits he did not satisfy the prerequisites outlined in A.R.S. § 23-1502(B) by first giving DMB an opportunity to address his allegedly intolerable working conditions – despite being represented by counsel at the time. [Response, p. 17.]; *see Biggs v. Town of Gilbert*, 2012 WL 94566, at *9 (D. Ariz. Jan. 12, 2012) ("without outrageous conduct, Plaintiff's failure to give notice of his intent to resign prohibits him from bringing

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

an AEPA constructive discharge claim"). Plaintiff's failure to give DMB an opportunity to address his concerns is even more unjustified in light of Mr. Critchley's express invitation to discuss them. [Motion, Ex. 16.] DMB is entitled to summary judgment on Plaintiff's AEPA claim for this reason alone.

Even if Plaintiff had satisfied the prerequisites outlined in A.R.S. § 23-1502(B), his AEPA claim still fails as a matter of law because Plaintiff has not produced any evidence that a reasonable employee in his position would have felt compelled to resign. In his Response, Plaintiff alleges that after raising concerns about DMB's payroll practices, DMB "began a campaign of harassment intended to and successful in driving [him] out." [Response, p. 17.] Specifically, Plaintiff contends DMB: (1) interfered with his employment at Desert Highlands; (2) forced him to become involved in the Juniors Academy; (3) added additional job duties to the Head Pro position; (4) prepared a "false" write up; (5) reduced his lessons and income; and (6) revoked his managerial online access. [*Id.*] These are the same unsupported, conclusory allegations Plaintiff makes in support of his FLSA retaliation claim, and they fail for the same reasons outlined above.

Perhaps the most telling admission from Plaintiff that demonstrates he was primarily dissatisfied with his compensation structure and his working conditions were not objectively intolerable is his insistence that he experienced two constructive discharges. Indeed, when Plaintiff declared himself constructively discharged from the Head Pro position, his attorney informed DMB he was "giving up his salaried position as Head Pro and instead will remain as a commission only employee providing lessons." [Motion, Ex. 17.] In other words, Plaintiff was unwilling to perform the administrative functions of the Head Pro position and only wanted to teach lessons. Disagreement with job duties and compensation do not amount to working conditions that are "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job." Plaintiff also cannot explain the clear discrepancy between his allegations of constructive discharge and his offer to remain working at DMB in a remarkably similar capacity under the same Tennis Director and General Manager he alleges were retaliating against him.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.,
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016

Plaintiff has not demonstrated he was constructively discharged as a matter of law. *See, e.g.*, *King v. AC & R Advertising*, 65 F.3d 764 (9th Cir. 1995) (holding that dissatisfaction with changes to compensation structure does not rise to level of constructive discharge); *Wagner v. Sanders Assocs., Inc.*, 638 F. Supp. 742 (C.D. Cal. 1986) (granting summary judgment for employer on constructive discharge claim where employee was demoted and had his pay reduced because he had already decided to look for other employment and resign and sue once other employment was secured). In sum, because Plaintiff voluntarily resigned his employment with DMB and cannot meet the high burden of proving his voluntary resignation was a constructive discharge, DMB is entitled to summary judgment on Plaintiff's AEPA claim.

## III.    Conclusion

For the foregoing reasons, DMB's Motion for Summary Judgment should be granted, and the Court should dismiss with prejudice Plaintiff's FLSA retaliation and AEPA wrongful termination claims.

RESPECTFULLY SUBMITTED this 18th day of February 2020.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.


By:  s/Leah S. Freed
      Leah S. Freed
      Justin B. Caresia
      2415 East Camelback Road, Suite 800
      Phoenix, Arizona 85016
      *Attorneys for Defendant DMB Sports*
      *Clubs Limited Partnership*

41762300.1

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
2415 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016